**STATE of North Dakota, Respondent,**

v.

**Vernon O'NEILL, Appellant.**

**Cr. No. 303.**

Supreme Court of North Dakota.

Oct. 26, 1962.

Rehearing Denied Nov. 27, 1962.

Vernon O'Neill, pro se, Austin & Christensen, Bismarck, on brief, for appellant.

Leslie R. Burgum, Atty. Gen., of North Dakota, and E. T. Christianson, State's Atty. of Pembina County, for respondent.

MORRIS, Judge.

This is an appeal from an order of the District Court of Pembina County dated February 28, 1962, denying a petition of Vernon O'Neill for a writ of error coram nobis. The petitioner alleges that he pleaded guilty, on September 25, 1944, to the crimes of grand larceny and robbery in the first degree, that he was on that day sentenced to imprisonment in the penitentiary to a term of from one to five years for each crime, that he was not represented by counsel at any stage of the proceedings, nor did he intelligently, knowingly and understandingly waive the services of counsel. He further states that he did not fully realize the seriousness and possible consequences of the charges against him and that he had been advised by the sheriff that an attorney was not necessary, and:

"That by virtue of this advice, by the fright of antagonizing the prosecutor or the Court, the assistance of counsel was not had and was not waived with a complete and intelligent understanding of the services that competent counsel could provide and that one would be provided free by the county. If the petitioner had been fully advised as to the services counsel could provide, free from the possibility of antagonizing the prosecutor or the Court and would be provided free of charge, he would have gladly accepted the services of counsel."

He also alleges that the failure of the court to properly advise him with respect to his right to counsel constitutes a violation of the Constitution of the United States and of the State of North Dakota which resulted in a negation of due process of law, with the result that his plea of guilty and sentence are a nullity. The petition also states that the petitioner has completed the sentences imposed in North Dakota but is presently imprisoned as a result thereof. An explanation of this statement appears from the transcript attached to the petition and from the petitioner's brief.

On September 17, 1944, the petitioner and Merle Robinson were apprehended, and their questioning implicated Ed Thoreson and Tim Miller. The four were brought before a justice of the peace upon complaints charging them with grand larceny and robbery in the first degree. They were bound over to the district court on both complaints. The justice's certification in the grand larceny case states:

"September 19, Defts appeared for hearing, complaint was read and Defts advised of their rights, whereon they each pleaded guilty, and waiving bond, were placed in Sheriff's care until their case is disposed of by Dist Judge."

A similar certification was made in the robbery case. The grand larceny case involved the theft of $387.80 worth of wheat from a farmer's granary. The robbery case involved the forcible robbery of an aged man, who lived alone, of $25 and a check.

On September 25, 1944, the four defendants were arraigned in the District Court of Pembina County on informations charging the two crimes. The first arraignment was for robbery. The defendants were asked their names and after response the state's attorney asked for slight changes in the first names of two of the defendants. The transcript shows that the following then took place:

"THE COURT: It may be so changed, Mr. State's Attorney. You boys are entitled to a lawyer if you want one. Do you want a lawyer? You are charged, each one of you, with a serious crime, do you wish to engage counsel? (Each one of defendants answers 'No.')

"THE COURT: Have you thought this over and are you sure you do not want any lawyer at all? (Defendants, and each of them, state they do not want counsel.)

"THE COURT: It is your right to have a lawyer during all the proceed-

ings if you want one. (Each defendant again states he does not want a lawyer.)

"THE COURT: You don't want one then? (All state "No.")

"THE COURT: Are you ready to proceed now or do you want time to think this over? (Each defendant states he is ready to proceed now.)

"THE COURT: All right, you may arraign the defendants then, Mr. State's Attorney."

The court then asked the defendants their ages, which they stated. Their ages ranged from 19 to 23 years. O'Neill gave his age as 21. Copies of the information were furnished the respective defendants and the information was read in open court. After the reading of the information, each defendant was asked in turn whether he pleaded guilty or not guilty, and each responded, "Guilty, your honor." The clerk was then directed to enter the pleas and the State moved separately for sentence on the information. The defendants were asked,

"Have either one of you any legal cause or grounds to show why sentence and punishment should not be imposed at this time?"

Then the transcript shows:

"(Each one of the defendants states he has no legal cause or grounds to show why sentence should not be imposed.)"

On the second arraignment, which was for grand larceny, the court said:

"You and each of you are entitled to a lawyer in this case just as I advised you you were entitled to a lawyer in the other case. We have to advise that in each case, but this time I guess you know you are charged with a serious offense. If you want a lawyer you are privileged to have one. Do you, any of you, want a lawyer?"

Each defendant then individually answered that he did not want a lawyer.

The record also contains a written confession, signed by each of the defendants, setting forth in some detail how the two crimes were committed. At the conclusion of the second arraignment, the court questioned the defendants extensively regarding their backgrounds and activities, including family and church relationships. He sentenced each of the defendants in each case for an indeterminate sentence of not less than one nor more than five years, to begin at noon on September 25, 1944. Thus the sentences ran concurrently.

According to petitioner's brief, which he prepared and signed, he served some eleven months in prison and the balance of his sentence on parole from which he was subsequently discharged. He explains why he is attacking the validity of the sentences after they have been served. It appears that in the state of Minnesota he pleaded guilty to a charge of larceny and admitted his prior convictions in North Dakota. Under the Minnesota law, M.S.A. § 610.28 provides longer sentences for second offenses than for first offenses. He was sentenced to an indeterminate sentence of 0 to 20 years instead of 0 to 10 years which could have been the maximum for a first offense. He was placed on probation. The probation was revoked and he is now in prison at Stillwater, Minnesota.

This proceeding was instituted by a motion noticing a hearing on his petition for a writ to be heard on January 29, 1962.

No question is raised as to procedure. This court has considered challenges to judgments of conviction on jurisdictional grounds after the time for appeal had expired in the following cases: State v. Magrum, 76 N.D. 527, 38 N.W.2d 358; State v. Malnourie, N.D., 67 N.W.2d 330; State v. Whiteman, N.D., 67 N.W.2d 599. The defendant relies heavily upon the Magrum and Whiteman cases. In both of these cases the defendant pleaded guilty to murder in the first degree without benefit of

counsel. In each case we held that the plea of guilty and waiver of counsel was not freely and understandingly made and that the judgments of conviction were therefore void. The records in those cases disclose circumstances materially different from those now before us.

When Magrum was sentenced, he was a minor 19 years of age. One Carl Wilson died late on November 24, 1935, from a gunshot wound previously inflicted. Magrum was taken into custody on November 26, but held incommunicado by the sheriff as a material witness. On several occasions during the afternoon and early evening the accused's brother was denied permission to see him. At eight o'clock that evening he was brought before the magistrate upon a complaint charging him with murder in the first degree and bound over to the district court. An information was immediately filed and he was arraigned at nine o'clock the same evening in the district court. The court asked Magrum, after informing him that he was charged with murder in the first degree,

"Do you also understand that you have a legal right to hire an attorney and fight this case through the courts?"

Upon receiving an affirmative answer, the court further said,

"Do you wish to do that?"

Magrum answered in the negative. The court then asked him to plead guilty or not guilty. He pleaded guilty and was sentenced to life imprisonment. A commitment was immediately issued and the defendant transported to the state penitentiary that night. Shortly after the arraignment Magrum's brother tried to see him and was told that he was on his way to the penitentiary.

In State v. Whiteman, we summarized the record as follows:

"When the record is completely and fully scrutinized, it indicates that Whiteman waived counsel because he felt that under all circumstances he could not procure the appointment of counsel.

"The defendant is an Indian citizen, 25 years of age, with only a grade school education. He was confronted by the most serious crime under our law. He had no one with whom to counsel or from whom to seek advice to protect his legal rights. He had been detained in an atmosphere of hostility of which the trial court was not aware. He had been subjected to intimidations, threats and even violence, and the evidence bears out that he felt that there was nothing he could do except to plead guilty to the information charging him with murder in the first degree. He felt that he had but one alternative. It was a waiver compelled by a lack of choice, arising out of necessities of the circumstances.

"A waiver of counsel based on these conditions cannot be said to be freely and understandingly made."

■ Section 13 of the North Dakota Constitution, in defining rights of the accused in criminal prosecutions, states that the party accused shall have the right "to appear and defend in person and with counsel."

Section 29–13–03, NDCC, requires that:

"If a defendant appears for arraignment without counsel, he must be informed by the court that it is his right to have counsel before being arraigned and must be asked if he desires the aid of counsel. If he desires, and is unable to employ, counsel, the court must assign counsel to defend him."

We have said that this legislative declaration sets a minimum standard which should be followed in order to afford the defendant his right to counsel. State v. Whiteman, supra.

■ The petitioner complains that the court should have specifically advised him

that counsel would have been provided free by the county. Where as here the court before arraignment advises the accused that it is his right to have a lawyer during all of the proceedings and the accused repeatedly tells the court that he does not want a lawyer, the court has fulfilled his duty with respect to advising the accused of his right to counsel under the provisions of Section 13 of the North Dakota Constitution and Section 29–13–03, NDCC, formerly Section 29–1303, NDRC 1943. He and the other young men who were involved were given a preliminary hearing on September 19, 1944. There is no intimation that they did not have free access to and an opportunity to communicate with their friends and relatives or were rushed into a preliminary hearing and arraignment, as was true in the Magrum case. The arraignment took place on September 25, six days after the preliminary hearing. Both the state's attorney and the judge who participated in the arraignment are dead. The petitioner has introduced into this record a brief affidavit of his mother to the effect that the sheriff and the state's attorney of Pembina County advised her that it was not necessary to attempt to retain an attorney to act in his defense and that it would be best if he and his codefendants pleaded guilty. There is absolutely no showing of coercion, intimidation or promises. It can be inferred from the affidavit that the petitioner's relatives were aware of his situation. There is no intimation that they were hindered or prevented from communicating with him regarding his possible defense or the securing of an attorney to represent him. It appears from his answers and conduct before the court that petitioner was an intelligent young man. In a report to the warden, which the judge was required by law to make, he says that:

"The boys are all above average and apparently have been brought up in respectable homes and given the usual amount of education and religious training."

We reach the conclusion that the judge in accepting the petitioner's plea of guilty was not remiss in his duties under our Constitution or statutes.

■ The petitioner further challenges the jurisdiction of the court and the validity of his sentence on the ground that he was deprived of his liberty without due process of law, in violation of the Fourteenth Amendment of the United States Constitution. This challenge goes, primarily, to waiver of the petitioner's right to counsel.

In Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357, the accused pleaded not guilty, stated that he had no lawyer, and in response to an inquiry of the court, stated that he was ready for trial. He was tried, convicted and sentenced without assistance of counsel. It was held that the Sixth Amendment to the United States Constitution withholds from Federal courts in all criminal proceedings the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel. The court said:

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty."

In Carnley v. Cochran, 369 U.S. 506, 82 S. Ct. 884, 8 L.Ed.2d 70, it is stated that the

principles declared in Johnson v. Zerbst are equally applicable to asserted waivers of the right to counsel in state criminal proceedings. The accused in that case conducted his own defense without benefit of counsel, although he was illiterate. The court points out circumstances which served to accentuate the unfairness of trial without counsel. The court of trial was a state court of Florida. The accused sought relief from his conviction by a provisional writ of habeas corpus from the Florida Supreme Court. The writ was discharged and the United States Supreme Court granted certiorari.

The record in that case appears to have been silent to any request for counsel on the part of the accused. The U. S. Supreme Court said:

"In the present case, however, there was no guilty plea, and the return to the writ does not allege an affirmative waiver. Therefore, there is no disputed fact question requiring a hearing. Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

It should also be noted that the court emphasized the unfairness of the trial in which the illiterate accused attempted to conduct his own defense and concluded by saying:

"Where, as in this case, the constitutional infirmity of trial without counsel is manifest, and there is not even an allegation, much less a showing, of affirmative waiver, the accused is entitled to relief from his unconstitutional conviction."

The question of whether the petitioner waived his constitutional right to counsel freely and understandingly is one of fact. The petitioner and the young men who were arraigned with him signed written confessions reciting details of the crimes charged. They gave further details in response to questions by the court during arraignment. There is no evidence of inducement or coercion. They pleaded guilty after repeatedly telling the court they did not want an attorney. Their responses were prompt and indicated an understanding of the questions put to them by the court. They were intelligent. Over 17 years elapsed between the time of sentence and the application for relief. While laches will not bar an attack upon a judgment of conviction as being void on constitutional grounds, the long delay in challenging validity, during which the prosecuting attorney and sentencing judge died, may be considered as bearing on the question of waiver, the credibility of the petitioner's assertions, and the inferences that he seeks to draw from the showing that he has made. In view of all of the facts and circumstances disclosed by this record, we are impelled to agree with the determination of the court from whose order this appeal is taken that the petitioner did freely, knowingly and understandingly waive counsel and plead guilty.

The order appealed from is affirmed.

SATHRE, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.