**Application of Ernest Edwin STONE for a Writ of Habeas Corpus.**

**Ernest Edwin STONE, Petitioner,**

**v.**

**STATE of North Dakota, and J. D. Woodley, Warden of the State Penitentiary, Bismarck, North Dakota, Respondents.**

**Cr. 382.**

Supreme Court of North Dakota.

Sept. 25, 1969.

Huseby & Backes, Fargo, and Dosland, Dosland & Nordhougen, Moorhead, Minn., for petitioner.

Helgi Johanneson, Atty. Gen., and John E. Adams, Asst. Atty. Gen., Bismarck, for respondents.

PAULSON, Judge.

Ernest Edwin Stone, on September 8, 1964, pleaded guilty to the charges of the crimes of rape in the first degree and of assault with deadly weapon with intent to kill. Thereafter he was sentenced to the State Penitentiary by the Honorable Eugene A. Burdick, Judge of the District Court of McKenzie County, North Dakota. Stone has been incarcerated since that time.

On February 18, 1969, Stone secured a writ of habeas corpus from the District Court of Burleigh County and, on February 24, 1969, that court held a hearing, after which it issued its order quashing the writ. There is no provision under our law for appeal from this decision. Accordingly, pursuant to § 87 of the North Dakota Constitution, the petitioner has now filed an application for a writ of habeas corpus with this court, praying for his release. We issued the writ and the hearing on the return was held on June 25, 1969, before this court.

Formerly, the primary and only question involved in habeas corpus proceedings was one of jurisdiction—namely, whether the particular order, judgment, or process the validity of which was attacked came within the lawful authority of the court or officer making or issuing it. 39 Am.Jur.2d, Habeas Corpus § 28; 39 C.J.S. Habeas Corpus § 16. Section 32–22–17 of the

North Dakota Century Code sets forth the statutory grounds for the discharge of persons restrained and who are entitled to relief under the North Dakota Habeas Corpus Act.

The writ of habeas corpus cannot ordinarily be used to correct mere errors or irregularities in the proceedings of a trial court which are not jurisdictional and which, at the most, render a judgment voidable. However, a judgment may be void and thereby subject to attack on habeas corpus for certain extreme irregularities other than lack of jurisdiction of the offense and of the person, as where fundamental constitutional rights have been violated during the course of the proceedings leading to conviction. 39 Am.Jur.2d, Habeas Corpus § 30; 39 C.J.S. Habeas Corpus § 15. This court, in Fournier v. Roed, 161 N.W.2d 458 (N.D.1968), discusses the expansion of the writ of habeas corpus, in paragraph 1 of the syllabus:

> "In light of the law of the writ of habeas corpus as it has developed, when a petitioner alleges in his application for a writ of habeas corpus that he has been restrained of his liberty in violation of the Constitution or the laws or the treaties of the United States, this court will review that allegation on a writ of habeas corpus in order to determine whether the petitioner is being restrained in violation of fundamental law, entitling him to his release."

In the present case, Stone alleges that he is being restrained in violation of his constitutional rights and, therefore, a review of Stone's contentions is proper in this habeas corpus proceeding.

Stone asserts that the conviction, judgment, sentence, and commitment are defective and void, within the purview of § 32–22–17(3), N.D.C.C., for the following reasons:

1. Defendant was allowed to plead guilty when not represented by counsel. in violation of his constitutional rights.

2. He was allowed to plead guilty after a waiver of counsel, which waiver was ill-formed and not intelligently made, and such fact became known to the trial court during the proceedings and, notwithstanding such knowledge, the trial court accepted the plea of guilty.

3. That at the time of such plea and hearing the defendant made statements to the court, which statements are of record and which statements are inconsistent with a plea of guilty, a fact known to the trial court, and, in spite of such knowledge, the trial court allowed the plea to stand.

4. Evidence was admitted by the trial court while defendant was not represented by counsel, which evidence is specifically prohibited by North Dakota statute, and, further, which evidence was not consistent with the plea of guilty made by this defendant, and, in spite of this knowledge, the trial court allowed and accepted the plea of guilty.

This brings us to the petitioner's major argument in this habeas corpus proceeding. Stone urges, basically, that his waiver of his right to have assistance of counsel, at the time he pleaded guilty to both crimes as charged, was not made in an intelligent and understanding manner, and, because of this ineffective waiver, he was allowed to plead guilty without counsel, which was a violation of his constitutional rights.

Prior to discussing this issue, we are required to determine first whether the plea of guilty entered by the petitioner was made freely and voluntarily. If the plea were not entered of the petitioner's own free will, it would not be necessary to consider the question of whether or not the petitioner made an effective waiver of his right to counsel.

A plea of guilty made by an accused must be free and voluntary. The court, in State v. Layer, 48 N.D. 366, 184 N.W. 666, 671 (1921), discusses this question thoroughly:

> "It is true, * * * that under the Constitution, one charged with crime is entitled to a trial by the jury, that he is

presumed innocent until proven guilty, and that the state must prove him guilty beyond a reasonable doubt. It is likewise true that the defendant is the only person who can waive such rights. It is the law, however, in this state that the defendant has the right to waive, and the state to receive such waiver on the defendant's plea of guilty, and that upon such plea he may lawfully be convicted and imprisoned. It is likewise true that such waiver of such privilege must be a voluntary one, and free from all duress, fear, intimidation, and coercion; that is, he must not be induced or compelled to make his plea of guilty by reason of threats, or in any way forced to do so. In other words, his plea must be free and voluntary."

This rule of law was reemphasized in State v. Malnourie, 67 N.W.2d 330, 331 (N.D. 1954), in the syllabus:

"A plea of guilty induced by coercion will not support a judgment of conviction. Such a conviction violates the due process clause of the Constitution of the United States and should be vacated upon a proper motion."

In the *Layer* case, the court determined that the defendant failed to prove that there was any inducement or coercion which precipitated his plea of guilty. In the *Malnourie* case, the court reversed the conviction because the plea was not voluntary. In the case at bar, it is necessary to carefully consider the record which resulted in Stone's pleas of guilty in order to determine whether or not such pleas were voluntary.

Mr. Stone, on July 21, 1964, was invited to the Fisher home by Mrs. Fisher, a co-employee of his who also worked at Jamie's Cafe in Williston, North Dakota. Prior to going to the Fisher home, Stone had consumed several drinks of alcoholic beverages. Upon his arrival at the Fisher home, at about 11:30 p.m., Mrs. Fisher introduced Stone to her husband. The three of them sat in the Fisher living room drinking beer until the early hours of the morning of the 22nd. After they had consumed about a case of beer, Fisher became angry with his wife for exhibiting an interest in Stone. Mrs. Fisher, upon this development, then left the Fisher home in one of the family automobiles. Shortly thereafter, Stone called a taxicab in order to search for Mrs. Fisher. Failing to find her, he returned to the Fisher home, at which time he and Mr. Fisher decided to search together for Mrs. Fisher. It was then approximately 6 a.m. on the 22nd of July and Mr. Fisher, not wanting to leave his three children home alone, awakened them and dressed them. All of them then entered Fisher's car and rode around the city of Williston, looking for Mrs. Fisher. Being unable to find her in Williston, they decided to drive to Sidney, Montana, where Fisher's mother lived, believing that Fisher's wife might be there. After arriving in Sidney and not finding her there, they decided to return to Williston. On the return trip, Fisher made a remark which caused Stone to become angry. Stone immediately drew his pocketknife and stabbed Fisher. Fisher drove off the road into a ditch and stopped his car. Stone stabbed Fisher again and then pulled Fisher from the car and left him lying on the ground. Stone then re-entered the vehicle in which the three Fisher children were still sitting and he attempted to drive the car out of the ditch. He was unsuccessful in his attempts and the car became hung up on a rock. Stone then became sexually aroused and engaged in intercourse with the oldest Fisher girl. Failing to do so to his complete satisfaction, he inserted his finger into her privates, which caused them to bleed. Stone then left the car and the children and walked to a farm, where he cleaned himself up and where he later was apprehended by the police.

The following day, on July 23, Stone accompanied Sheriff Gerald F. Shafer and Special Agent Richard S. Hilde, of the State Bureau of Criminal Identification, to the scene of the crimes. Stone then signed a written statement wherein he related the

above events. That statement contained the following waiver of Stone's right to assistance of counsel:

"I have been informed that I have the right to the services of an attorney, but such is not my desire at this time. I know that any statement I make may be used for or against me in a court of law."

On the same day that the statement was signed by Stone, separate complaints were issued whereby Stone was charged with the crimes of rape in the first degree and of assault with deadly weapon with intent to kill, based on the events that happened on the 22nd day of July. On July 24, Stone appeared before the county justice at Watford City, North Dakota, who informed Stone of his right to the aid of counsel at every stage of the proceedings; of his right to have witnesses called in his behalf; of his right to preliminary hearings; of his right to waive preliminary hearings; and of his right to time in which to prepare for trial or for preliminary examinations. The notations of the county justice set forth in the return to the district court reveal that the defendant, Ernest Edwin Stone, understood the complaints perfectly and that he was guilty, and that he desired to waive preliminary hearings in order that he could be arraigned before the district court at an early date for the purpose of entering his pleas. The county justice ordered Stone bound over to the district court. On September 4, 1964, informations against Stone were filed with the clerk of the district court of McKenzie County, and on September 8, 1964, Stone was arraigned. He entered separate pleas of guilty to the crimes of rape in the first degree and of assault with deadly weapon with intent to kill.

In State v. Layer, *supra,* the defendant had signed a confession prior to the time he had pleaded guilty and it was Layer's intention also that he be taken before the district court as soon as possible so that he could enter his plea of guilty to the crime of murder. The court refused to permit the defendant to withdraw his plea of guilty and to allow him to enter a plea of not guilty, because the affidavits submitted in support of the defendant's motion were attempting to show that the defendant was coerced into entering a plea of guilty, which affidavits had no probative value. The affidavits were in support of an attempt to show the coercive means employed against the defendant, but the court did not give any credence to them. The judgment was affirmed on appeal.

This court, in the *Layer* case, considered the question of whether the plea was voluntary. The petitioner in the instant case, Ernest Edwin Stone, does not submit any proof to support his claim that he was ever induced or coerced into pleading guilty. Furthermore, the record is devoid of any evidence which would in any manner assist this court in determining whether the guilty pleas were involuntary. On the contrary, the record reveals that Stone voluntarily made a statement admitting the commission of the two crimes with which he was charged. Further, the county justice's notations indicate that Stone intended to plead guilty at an early date and thus the pleas of guilty to the crimes as charged were voluntary.

State v. Malnourie, *supra,* is the second North Dakota case which considered the question of whether the plea was voluntarily entered. In the *Malnourie* case, the accused had confessed to the crime of murder, and after he had pleaded guilty to the charge, the judge examined him to determine the punishment which should be imposed; and at that time the defendant denied any participation in the crime or any knowledge of it at all. The testimony adduced by the judge's examination of the defendant showed that, prior to the confession made by Malnourie, he had been continuously beaten and abused, and that he had been questioned for a long period of time, during which a mob of people were threatening to harm him.

The Supreme Court was of the opinion that the answers given in response to the judge's questioning revealed that there was not a voluntary waiver, nor was the plea of

guilty entered in a free and voluntary manner. The case at bar is clearly distinguishable, because the petitioner is not claiming that any coercion, intimidation, or threats induced him to enter pleas of guilty. A defendant can plead guilty voluntarily to an information and the court may accept it. State v. O'Neill, 117 N.W.2d 857 (N.D. 1962); State v. Throndson, 49 N.D. 348, 191 N.W. 628 (1923). The petitioner has done so in this case and, after a full examination of the record, we determine that his pleas of guilty were freely and voluntarily entered.

■ Having decided that Stone's pleas of guilty were freely and voluntarily entered, we are now faced with the petitioner's second contention; that is: Did the defendant effectively and intelligently and understandingly waive his right to the assistance of counsel at the time he pleaded guilty to the crime of rape in the first degree and the crime of assault with deadly weapon with intent to kill? It is thus necessary to reexamine the entire record to determine whether the defendant freely and understandingly waived counsel.

Whether an accused person has effectively waived his right to counsel depends largely on the facts and circumstances of the particular case. State v. Whiteman, 67 N.W.2d 599 (N.D.1954). Among probative factors bearing on this question are the age, education, and mental capacity of the defendant, his background and experience, and his conduct at the time of the alleged waiver. 21 Am.Jur.2d, Criminal Law § 317.

The record reveals that Stone was 39 years of age at the time of the commission of the two offenses, and that, after receiving an eighth-grade education, he entered the service. After being separated from the service, Stone was married and later divorced. While he was married, he was charged with child desertion and he is now paying about $173 a month for the support of his two children. He had been arrested three times prior to this present conviction, on charges of burglary, rape, and public intoxication, none of which arrests resulted in conviction except on the charge of public intoxication.

An examination of the record discloses what was stated by the petitioner concerning the waiver of his right to counsel. The pertinent questions and answers with reference to the rape charge are as follows:

"THE COURT: Do you understand the nature of these proceedings?

"MR. STONE: Yes, your Honor.

"THE COURT: And are you represented by counsel?

"MR. STONE: No, sir.

"*THE COURT: This is a criminal action brought to this Court, that is to say the District Court, of McKenzie County, North Dakota, charging you with the crime of Rape in the First Degree. This is a criminal offense punishable by imprisonment in the State Penitentiary for not less than one year and accordingly you are entitled to trial by jury on this charge, and you are also entitled to have the services of a lawyer to advise you at all stages of the proceedings and in particular before pleading to the Criminal Information, and if you are without funds sufficient to employ counsel, the Court will appoint an attorney for you. In the light of this information, do you wish to have the services of a lawyer before further proceedings are had?* [Emphasis added.]

"MR. STONE: No, sir, your Honor.

"THE COURT: Now, have you given this matter some consideration?

"MR. STONE: Yes, your Honor.

"THE COURT: And in making this decision have you been promised any reward or other inducement of any kind?

"MR. STONE: No, sir.

"THE COURT: And you understand that you have the right to jury trial if you wish?

"MR. STONE: I understand, sir.

"THE COURT: The Court's Minutes will show that the defendant, Ernest Edwin Stone, has been advised of his right to counsel and that he has expressly waived such right.

MR. STONE, you have 24 hours in which to consider your plea to the Criminal Information if you wish. However, if you are ready to plead to the Criminal Information at this time you may so indicate.

"MR. STONE: I am, your Honor.

"THE COURT: Are you ready to plead at this time?

"MR. STONE: Yes, sir, I am.

*  *  *  [The Criminal Information was read.]

"THE COURT: Ernest Edwin Stone, have you heard the reading of the Criminal Information?

"MR. STONE: Yes, sir, your Honor.

"THE COURT: And do you understand that you are charged with the crime of Rape in the First Degree?

"MR. STONE: Yes, your Honor.

"THE COURT: How do you plead to the Criminal Information, guilty or not guilty?

"MR. STONE: Guilty, sir.

"THE COURT: Now, before accepting your plea, I'd like to ask you again if anyone, any officer has promised you any reward or subjected you to any threat or coercion to induce you to plead guilty to the charge.

"MR. STONE: No, sir, your Honor.

"THE COURT: In that case the plea of guilty is received and the Court's Minutes will show that the defendant, Ernest Edwin Stone, pleads that he is guilty of the crime of Rape in the First Degree as charged in the Criminal Information. You may be seated."

A further perusal of the record reveals the pertinent questions and answers, with reference to the charge of assault with deadly weapon with intent to kill:

"BY THE COURT:

"Q Mr. Stone, what is your true and full name?

"A (By Mr. Stone) Ernest Edwin Stone.

"Q Is your name correctly shown in the Criminal Information?

"A Yes, sir, your Honor.

"Q What is the date of your birth?

"A November the 26th, 1924.

"Q Where were you born?

"A Great Bend, Kansas.

"Q What formal education have you had?

"A 8th grade, sir.

"Q Where did you complete the 8th grade?

"A Great Bend, Kansas.

"Q Do you understand the nature of these proceedings?

"A Yes, sir, your Honor.

"Q Are you represented by a lawyer?

"A No, sir.

"Q *(By the Court) This is a criminal action brought to this Court by the filing of a Criminal Information charging you with the crime of Assault with a Deadly Weapon with Intent to Kill. This crime is punishable by imprisonment in the Penitentiary for not less than one year nor more than ten years. Accordingly you are entitled to trial by jury on this charge, and you are also entitled to the advice of a lawyer at all stages of the proceedings and especially to advise you before pleading to the Criminal Information, and to assist you in preparing your defense or in preparing your evidence if you so desire, and if you are without funds sufficient to employ an attorney, the Court will appoint one for you. In the light of this Information do you wish to have the services of a lawyer before further proceedings are had?* [Emphasis added.]

"A (by Mr. Stone) No, sir, your Honor.

"THE COURT: Do you understand that you have the right to have the services of a lawyer if you wish?

"MR. STONE: Yes, sir.

"THE COURT: And has anyone made any promises or coerced you in any way to cause you to waive your right to a lawyer?

"MR. STONE: No, sir.

"THE COURT: The Court's Minutes will show that the defendant Ernest Edwin Stone has been advised of his right to counsel and that he has expressly waived such right.

Now, you have 24 hours in which to consider your plea to the Criminal Information. However, if you are ready to plead to the Criminal Information at this time you may so indicate.

"MR. STONE: I am, your Honor.

"THE COURT: In that case the motion to arraign is granted, the Defendant will rise and face the Court. and the State's Attorney will read the Criminal Information."

[The Criminal Information was read.]

\* \* \* \* \* \*

"THE COURT: Ernest Edwin Stone, have you heard the reading of the Criminal Information?

"MR. STONE: Yes, sir, your Honor.

"THE COURT: And do you understand that you are charged with the crime of Assault with Deadly Weapon with Intent to Kill?

"MR. STONE: Yes, sir.

"THE COURT: How do you plead to the Criminal Information, guilty or not guilty?

"MR. STONE: Guilty, sir.

"THE COURT: Before receiving the plea of guilty, I'll ask you if anyone has promised you any reward or has coerced you in any way to make this plea to the Criminal Information?

"MR. STONE: No, sir.

"THE COURT: In that case the Court will receive the plea of guilty to the Criminal Information and the Court's Minutes will show that Ernest Edwin Stone pleads that he is guilty of the crime of Assault with a Deadly Weapon as charged in the Criminal Information. You may be seated."

■■ Section 13 of the North Dakota Constitution guarantees to one accused of crime the right to appear and defend in person with counsel. Sections 29–01-06, 29–01–27, and 29–13–03, N.D.C.C., are legislative expressions of the guarantee to one accused of crime of the right to appear in person and with counsel. These legislative declarations set a minimum standard which should be followed in order to afford the defendant his right to counsel as guaranteed. State v. Whiteman, *supra;* State v. O'Neill, 117 N.W.2d 857 (N.D.1962).

Section 29–13–03, N.D.C.C., provides:

"If a defendant appears for arraignment without counsel, he must be informed by the court that it is his right to have counsel before being arraigned and must be asked if he desires the aid of counsel. If he desires, and is unable to employ, counsel, the court must assign counsel to defend him. \* \* \*."

The Sixth Amendment of the United States Constitution entitles one charged with a crime to the assistance of counsel. In Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the court said:

"\* \* \* compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence." 304 U.S. at 467, 58 S.Ct. at 1024.

The court also stated:

"A waiver is ordinarily an intentional relinquishment or abandonment of a

known right or privilege." 304 U.S. at 464, 58 S.Ct. at 1023.

Since that decision, the United States Supreme Court has held the Sixth Amendment to the Federal Constitution directly applicable to the States in criminal prosecutions through the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Therefore, this court must adduce and determine from the facts surrounding Stone's pleas of guilty whether he made an intentional relinquishment or abandonment of his right to the assistance of counsel.

There are three major cases in North Dakota which we can use as guides to determine whether Stone's waiver was intentional. In State v. Magrum, 76 N.D. 527, 38 N.W.2d 358 (N.D.1949), the court held that the defendant did not freely and understandingly waive his right to assistance of counsel. When Magrum was sentenced he was a minor 19 years of age. Magrum was taken into custody and held incommunicado by the sheriff as a material witness in connection with the murder of one Carl Wilson. On several occasions the accused's brother was denied permission to see him. At eight o'clock in the evening on which he was taken into custody, he was brought before the magistrate upon a complaint charging him with murder in the first degree, and was bound over to the district court. An information was immediately filed, and he was arraigned at nine o'clock the same evening in the district court. Magrum pleaded guilty after being asked if he would like to hire an attorney, to which question he replied in the negative. He was committed to the State penitentiary.

In State v. Whiteman, *supra,* the court determined that the defendant did not freely and understandingly waive counsel. The defendant was an Indian citizen, 25 years of age, possessing only a grade-school education. Whiteman was not permitted to consult with nor receive advice from any person. He had been detained in an atmosphere of hostility, of which the trial court was not aware. He had been subjected to intimidation, threats, and even violence, and the evidence bears out the fact that he decided that there was nothing he could do except plead guilty to the information charging him with murder in the first degree. He was of the opinion that he had no alternative but to waive counsel. His waiver was one compelled by a lack of choice, arising from the necessities of the existing circumstances.

In State v. O'Neill, *supra,* the court held that the defendant failed to prove that he did not waive his right to assistance of counsel in a free and understanding manner. The defendant was 21 years of age and had previously appeared before the courts on numerous occasions. The defendant signed a written confession, reciting details of the crime, and answered further questions propounded by the court during the arraignment. There was no evidence of inducement or coercion. He pleaded guilty after repeatedly telling the court that he did not desire an attorney. His responses were prompt and intelligent and indicated an understanding of the questions asked by the court.

Having reviewed the entire record and considered the command of the State and the Federal Constitutions and of the North Dakota statutes in force and effect, this court is of the opinion that the questions asked by the trial court and the answers given in response thereto were amply sufficient to effectively advise Stone of his right to the assistance of counsel, and that the waiver by Stone of his right to the assistance of counsel was effectively and intelligently and understandingly made. Stone signed a written confession, reciting the details of the crimes charged. Stone furnished further details in response to questions by the court during the arraignment proceedings. No evidence of threats, inducement, or coercion is contained in the record. He pleaded guilty to the two charges after stating several times that he did not want an attorney. His responses revealed that he understood the questions

propounded to him in the examination by the court. His answers were intelligent. Further, nearly five years have elapsed between the time of sentence and the application for relief by habeas corpus.

Petitioner urges that he was apprised that he could be imprisoned for not less than one year and that he was unaware of the maximum sentence, that is, of life imprisonment, upon entering a plea of guilty, as set forth in § 12–06–25, N.D.C.C. It is contended that petitioner was misled and was unable to understand from the statement of the court that petitioner would be sentenced to more than a year in the State Penitentiary. The sentencing statute, § 12–30–05, N.D.C.C., reads as follows:

"Rape in the first degree shall be punished by imprisonment in the penitentiary for not less than one year."

In People v. Jackson, 27 A.D.2d 943, 279 N.Y.S.2d 259, 260 (1967), the court held that:

"The phrase 'not less than' one and one-half years is not to be read, as defendant contends, as if were 'not more than' one and one-half years."

We adopt the holding of the above court and, accordingly, the petitioner's contention is without merit.

Stone's third assertion is governed by § 29–14–16, N.D.C.C. which vests in the trial court the discretionary power to refuse to accept the guilty plea of the accused. A review of the entire record in this case fails to indicate that the trial judge abused his discretion by not refusing to accept the accused's pleas of guilty because of alleged inconsistencies. The record clearly reveals that there are no inconsistencies.

Stone's fourth argument is based upon § 29–26–18, N.D.C.C. which provides that all evidence in aggravation or mitigation of punishment must be presented by testimony of witnesses examined in open court. In the case at bar, statements signed by two doctors were introduced to show the extent of the physical injuries incurred by both victims. The pertinent language contained in the transcript of the hearing before Judge Burdick is as follows:

"MR. ANTHONY: * * * and also offer what has been marked State's Exhibit 11, which is a subscribed and sworn statement by Dr. Craven, Medical Doctor of Williston, North Dakota; and State's Exhibit No. 12, which is a signed statement by Mr. D. C. Oliver, a Medical Doctor of Watford City, North Dakota.

"THE COURT: * * * I'd like the defendant to know that Exhibits 11 and 12 cannot be received in evidence over the defendant's objection; namely, the medical exhibits, because the opportunity for cross-examination would not be afforded. However, if the defendant has no objection, the Exhibits will be received in evidence.

"MR. STONE: I have no objection.

"THE COURT: Exhibits 11 and 12 are received in evidence."

Section 29–26–18, N.D.C.C. has been interpreted in State v. Hefta, 88 N.W.2d 626, 629 (N.D.1958), in which this court stated:

"Defendant was present when the exhibits were offered and made no objection. He must be held to have waived the right to make any such objection."

The present case is similar to the *Hefta* case. However, here the trial court went further and explained to the defendant that Stone could object to the admissibility of Exhibits 11 and 12, but Stone still stated that he did not desire to object. On the basis of the record in this case, the third and fourth contentions of the petitioner are without merit.

For reasons stated in the opinion, the writ of habeas corpus is hereby quashed.

TEIGEN, C. J. and ERICKSTAD, STRUTZ and KNUDSON, JJ., concur.