**STATE of North Dakota, Plaintiff and Appellee,**

v.

**August T. VOGEL, Defendant and Appellant.**

**Cr. No. 838.**

Supreme Court of North Dakota.

Oct. 20, 1982.

Richard L. Schnell, State's Atty., Mandan, for plaintiff and appellee State of N.D.

Ralph A. Vinje, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

This case comes before us under the Uniform Post-Conviction Procedure Act, Chapter 29–32, N.D.C.C. In accordance with the Act, August T. Vogel moved the district court for withdrawal of his guilty plea on the grounds that it was made involuntarily

and without knowledge of the consequences of pleading guilty. The district court denied the motion, and we affirm.[1]

On May 13, 1966, Vogel was arrested, and soon afterward the trial court appointed counsel for him. Thereafter, on September 23, 1966, Vogel was arraigned by criminal information charging him with the crime of first-degree murder. At the arraignment he received a copy of the information, which was then read to him. Vogel thereupon entered a plea of guilty.

Before accepting the plea the trial judge asked Vogel whether he understood that by pleading guilty he was admitting he committed the crime of first-degree murder, and whether he fully understood, after talking with his attorney, what it means to plead guilty to first-degree murder. Vogel answered "yes" to the questions. The trial judge next asked Vogel's attorney whether or not he had consulted with Vogel regarding the seriousness of the crime of first-degree murder and the punishment for the crime, to which he responded that he had discussed these matters with Vogel several times, including just that morning; that he had explained to Vogel that a plea of guilty to the crime would result in a mandatory life sentence; and that, if Vogel chose, he could have a trial by jury. The court then accepted Vogel's plea.

Before sentencing, the trial judge further inquired of Vogel and his attorney whether there was any legal cause or excuse why sentence should not be imposed. Both answered "no." The judge then asked Vogel if he wished to say anything to the court. Vogel again answered "no." At that point, the court sentenced Vogel to confinement in the North Dakota State Penitentiary at hard labor for his natural life.[2]

On September 23, 1981, Vogel filed an application for post-conviction relief. Vogel alleges by affidavit in support of the petition for post-conviction relief that his guilty plea was the result of coercion and duress to the extent that, among other less significant matters,

(1) his attorney influenced him to plead guilty against his wishes,[3]

(2) the jailor caused his cell to become extremely cold at night and exceedingly hot during the day,

(3) he had a severe cold and a skin disease for which he received no medical attention or medication, and

(4) the living conditions in the jail were substandard.

On the basis of these allegations, Vogel concludes that his plea was made involuntarily.

Furthermore, Vogel alleges in the petition that the trial judge failed to inform him personally of the penalty for the crime of first-degree murder and to inquire of him personally whether or not he knew the punishment for first-degree murder. On

---

1. *State v. Gustafson*, 278 N.W.2d 358 (N.D. 1979), establishes that the issue of the voluntariness of a plea of guilty is properly reviewable under the Uniform Post-Conviction Procedure Act.

2. At the same proceeding, reports from two medical experts—one a psychologist and the other a psychiatrist—were offered and received into evidence. The reports contained the opinion that Vogel was competent to stand trial and that he was capable of understanding the nature and quality of his act at the time of the alleged commission of the crime.

Also in existence at the time of arraignment was a transcribed statement made by Vogel to the Sheriff and the State's Attorney, and a newspaper article containing a statement made to a local reporter. Both statements were admissions that he had shot and killed the victims of the crime with which he was charged. Although these statements were not offered into evidence at the arraignment, they became a part of the record on appeal when they were offered and received at the post-conviction hearing.

3. It is not clear from the petition for post-conviction relief nor from the brief on appeal whether or not Vogel is alleging incompetency of counsel. Assuming that he is, nothing in the record leads us to the conclusion that counsel was ineffective. Encouraging a client to plead guilty does not automatically make counsel incompetent. At times, such encouragement may very well demonstrate the highest degree of competency. As for Vogel's bare assertion that he was influenced by his attorney to plead guilty against his wishes, this is not enough proof.

the basis of these allegations, Vogel concludes that he was not apprised of the consequences of a plea of guilty, and his plea therefore was not made knowingly. The district court disagreed and determined that Vogel's plea was made both voluntarily and knowingly.

Vogel's allegations give rise to two major issues on appeal. One is whether or not the district court properly determined that Vogel's plea of guilty was made voluntarily; the other is whether or not the district court properly determined that Vogel's plea of guilty was made knowingly.

In deciding these issues, we first must determine the law that applies. Because Vogel's plea was made before the North Dakota Rules of Criminal Procedure became effective, the requirements of Rule 11 do not apply. Rule 59 Explanatory Note, N.D.R.Crim.P. And because Vogel's plea was made before the United States Supreme Court's decision in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the requirement that the trial judge make specific inquiries of the defendant before accepting a guilty plea does not apply. *Brown v. Swenson,* 487 F.2d 1236, 1240 (8th Cir. 1973), *cert. denied* 416 U.S. 944, 94 S.Ct. 1952, 40 L.Ed.2d 296 (1974). However, the currently existing standard requiring that a guilty plea be made voluntarily does apply in the present case [*Application of Stone,* 171 N.W.2d 119 (N.D.1969), *cert. denied* 397 U.S. 912, 90 S.Ct. 912, 25 L.Ed.2d 93 (1970) ], as does the currently existing standard requiring that a guilty plea be made knowingly, that is to say, with sufficient awareness of the nature and likely consequences of the crime charged. *Brown v.*

*Swenson, supra; State v. Magrum,* 76 N.D. 527, 38 N.W.2d 358 (1949). The determinative question then becomes whether or not, in view of the *totality of the circumstances,* the plea was made voluntarily and knowingly. *Brown v. Swenson, supra.* The significant difference between this pre-*Boykin* standard—the one we adopt for purposes of the present case—and our current standard for determining whether or not a plea has been made voluntarily and knowingly is that the former does not require an affirmative showing on the record that (1) specific procedural warnings were given to and (2) specific procedural questions were asked of the defendant by the trial judge; it requires only that the record contain sufficient facts to demonstrate the voluntary and knowing nature of the plea. *Winford v. Swenson,* 517 F.2d 1114, 1117 (8th Cir. 1975), *cert. denied* 423 U.S. 1023, 96 S.Ct. 464, 46 L.Ed.2d 396 (1975).

Turning to the record of Vogel's arraignment as outlined above, we find nothing to show that his plea was the result of duress or coercion. All we have is Vogel's uncorroborated affidavit containing this allegation. And when a conflict exists between the record and the unsupported assertion of an interested party, we are compelled to accept the verity of the record. *State v. Barlow,* 193 N.W.2d 455, 460 (N.D. 1971). We do not hold, however, that the record never can be impeached; we hold only that allegations of an interested party ordinarily must be supported by independent proof.[4] It is our view, based on the record and the evidence before us, that Vogel's plea of guilty was made voluntarily.

Next we consider whether Vogel's plea was made knowingly, viz., with sufficient

---

4. A rule like this is in some measure designed to protect against situations of the following sort as described by this court in *State v. Layer,* 48 N.D. 366, 184 N.W. 666, 670 (1921): "[A]t the time [petitioner] made his affidavits herein, he was an inmate of the penitentiary, and under the judgment and sentence of the court would remain so for the term of his natural life. He knew that, so long as life should continue, he would be prohibited from free association with the world outside; that he had forfeited for the remainder of his lifetime the society of his family, of his friends, and relations. He knew that the sun of his personal liberty had forever set; his future held for him no hope, no ray of light. In these circumstances the binding force and sanctity of an oath might mean little to him. He in fact would be suffering no additional penalty should he make a false affidavit. In these circumstances, he would be quite free and fearless in swearing to the statements contained in his affidavits."

awareness of the likely consequences of his plea. Vogel argues that his plea was not made knowingly, because the trial judge did not inform him personally of the penalty for the crime of first-degree murder, and because the trial judge did not ask him personally whether he knew of the punishment for first-degree murder.

Guided as we are by the pre-*Boykin* standard for determining the voluntary and knowing nature of a guilty plea, we note that there was no requirement that the trial judge address the defendant personally in open court regarding the matters of which Vogel complains. Rather, the test is whether or not, in light of the totality of the circumstances, the record contains sufficient facts to demonstrate that the plea was made voluntarily and knowingly. *Winford v. Swenson, supra.* When asked by the trial judge whether or not he fully understood, after talking with his attorney, what it meant to plead guilty to first-degree murder, Vogel answered "yes" and gave no indication that he did not understand. Likewise, when his attorney informed the trial judge—in Vogel's presence—that he had explained to Vogel that a plea of guilty to the crime involved a mandatory life sentence, and that he had a right to a jury trial, Vogel said nothing. It was only then that the trial court accepted Vogel's plea. It is our view, based on the record before us, that Vogel's plea of guilty was made knowingly.[5]

 When the relief sought under the Post-Conviction Procedure Act is the withdrawal of a guilty plea, we treat the action as a Rule 32(d), N.D.R.Crim.P., motion to withdraw a guilty plea, at least to the extent that we will permit the withdrawal when it is necessary to correct a manifest injustice. *State v. Gustafson,* 278 N.W.2d 358, 363 (N.D.1979).

The petitioner has the burden of showing that a manifest injustice will result if he is not allowed to withdraw his guilty plea, and the decision whether manifest injustice will or will not result is in the sound discretion of the trial court and will not be interfered with on appeal except upon a showing of an abuse of discretion. *United States v. Becklean,* 598 F.2d 1122, 1125 (8th Cir. 1979), *cert. denied* 444 U.S. 864, 100 S.Ct. 135, 62 L.Ed.2d 87 (1979); Rule 32(d), N.D.R.Crim.P.[6]

Because we agree with the district court's determination that Vogel's plea of guilty was made both voluntarily and knowingly, we cannot say that the court abused its discretion, and, accordingly, we affirm the judgment of the district court denying post-conviction relief.

ERICKSTAD, C.J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

**5.** In denying Vogel's motion to withdraw his guilty plea, the district court determined not only that the plea was made voluntarily and knowingly, but also that the motion to withdraw was not timely. Because we have decided that Vogel's plea was made voluntarily and knowingly, we need not consider the further issue of the timeliness of his motion to withdraw.

**6.** Although F.R.Crim.P. 32(d) and N.D.R.Crim.P. 32(d) are not identical, both declare that a guilty plea may be withdrawn only to correct a manifest injustice; N.D.R.Crim.P. 32(d) contains the further requirement that the motion to withdraw be timely,