STATE of North Dakota, Plaintiff
and Appellee,

v.

Grant H. HENDRICK, Defendant
and Appellant.

Criminal No. 950145.

Supreme Court of North Dakota.

Jan. 30, 1996.

Robert A. Freed (argued), Assistant State's Attorney, Bismarck, for plaintiff and appellee.

William A. Mackenzie (argued), of Mackenzie & Reisnour, Jamestown, for defendant and appellant.

MESCHKE, Justice.

Grant H. Hendrick appeals from an order denying his motion to reconsider a prior order disallowing withdrawal of his 1966 guilty plea and denying his application for post-conviction relief from that 1966 conviction. We affirm.

In August 1966, Hendrick, then age 20, was charged with first degree burglary of Boyd's Standard Service Station in Jamestown. While held in the Stutsman County Jail, Hendrick "behaved in a disturbed, agitated manner, smashed his eyeglasses and attempted to cut his wrists." Hendrick was taken to the North Dakota State Hospital for psychiatric and psychological evaluations. After doctors diagnosed him as having "Sociopathic Personality, dyssocial reaction," and reported Hendrick was attempting to "establish a record of mental illness" to avoid criminal charges, he was returned to jail. Hendrick waived a preliminary hearing and was bound over for arraignment.

On September 26, 1966, Hendrick waived his right to counsel and pled guilty to the burglary charge. Hendrick was sentenced to serve from five to fifteen years in the State Penitentiary. In 1968, Hendrick was convicted of escape from prison and sentenced to an additional two years at the Penitentiary. *See State v. Hendrick,* 164 N.W.2d 57 (N.D.1969). Hendrick was released from the Penitentiary in June 1971 after completing his sentences.

Later in 1971, Hendrick was arrested at the scene of a breaking and entering in Michigan after seriously wounding a policeman. Hendrick pled guilty to larceny and was convicted by a jury of assault with intent to do great bodily harm less than murder. Hendrick was subsequently charged in Michigan with being an habitual offender based on the two Michigan convictions, the two North Dakota convictions, and a 1966 Washington conviction for burglary. *See People v. Hendrick,* 398 Mich. 410, 247 N.W.2d 840 (1976). Hendrick was convicted as a fourth felony offender and sentenced to life imprisonment.

In December 1994, while still serving his life sentence in Michigan, Hendrick contacted a North Dakota attorney and moved for post-conviction withdrawal of his guilty plea to the 1966 Stutsman County burglary charge. After Hendrick's motion was initially denied, he applied for and was granted court-appointed counsel who filed a motion to reconsider and a formal application for post-conviction relief. Following a hearing, the trial court ruled the guilty plea was voluntary, but because the trial judge in 1966 "did not advise the defendant of a penalty for this crime prior to the entry of his plea of guilty, ... the plea was not knowingly made." However, the trial court ruled the motion was "not timely, coming approximately twenty-eight years after his conviction," and denied Hendrick's motion to reconsider, his motion to withdraw the guilty plea, and his application for postconviction relief. Hendrick appealed.

When a person seeks to withdraw a guilty plea under the Post–Conviction Procedure Act, NDCC Ch. 29–32.1, the action is generally treated as a NDRCrimP 32(d) motion. *State v. Boushee,* 459 N.W.2d 552, 555–56 (N.D.1990). Under Rule 32(d), withdrawal of a guilty plea is allowed when necessary

to correct a manifest injustice. *State v. Trieb*, 516 N.W.2d 287, 290 (N.D.1994). The decision whether a manifest injustice exists for withdrawal of a guilty plea lies within the trial court's discretion, and it will not be reversed on appeal absent an abuse of that discretion. *State v. Zeno*, 490 N.W.2d 711, 713 (N.D.1992). An abuse of discretion occurs if it is not exercised in the interest of justice. *Kaiser v. State*, 417 N.W.2d 175, 179 (N.D.1987). As *Trieb*, 516 N.W.2d at 291, explained, when it is necessary to review a trial court's findings of fact to determine if an abuse of discretion has occurred, we will not disturb those findings unless they are clearly erroneous.

■ Hendrick's guilty plea was made before the United States Supreme Court decided *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and before the North Dakota Rules of Criminal Procedure became effective in 1973. Thus, the requirements of *Boykin* and NDRCrimP 11 that the trial judge make certain specific inquiries of the defendant before accepting the guilty plea do not apply. *State v. Vogel*, 325 N.W.2d 184, 186 (N.D.1982). The *Vogel* court explained why:

> [T]he currently existing standard requiring that a guilty plea be made voluntarily does apply in the present case [*Application of Stone*, 171 N.W.2d 119 (N.D.1969), *cert. denied* 397 U.S. 912, 90 S.Ct. 912, 25 L.Ed.2d 93 (1970) ], as does the currently existing standard requiring that a guilty plea be made knowingly, that is to say, with sufficient awareness of the nature and likely consequences of the crime charged. *Brown v. Swenson*, [487 F.2d 1236, 1240 (8th Cir.1973), *cert. denied* 416 U.S. 944, 94 S.Ct. 1952, 40 L.Ed.2d 296 (1974) ]; *State v. Magrum*, 76 N.D. 527, 38 N.W.2d 358 (1949). The determinative question then becomes whether or not, in view of the *totality of the circumstances,* the plea was made voluntarily and knowingly. *Brown v. Swenson, supra.* The significant difference between this pre-*Boykin* standard— the one we adopt for purposes of the present case—and our current standard for determining whether or not a plea has been made voluntarily and knowingly is

that the former does not require an affirmative showing on the record that (1) specific procedural warnings were given to and (2) specific procedural questions were asked of the defendant by the trial judge; it requires only that the record contain sufficient facts to demonstrate the voluntary and knowing nature of the plea. *Winford v. Swenson*, 517 F.2d 1114, 1117 (8th Cir.1975), *cert. denied* 423 U.S. 1023, 96 S.Ct. 464, 46 L.Ed.2d 396 (1975).

*Vogel*, 325 N.W.2d at 186 (Emphasis in original). Thus, the pre*Boykin* standard, applicable here, depends on the totality of the circumstances, not specific recitals.

During the 1966 hearing, the sentencing court advised Hendrick he could be represented by an attorney if he wished, and at no cost if he could not afford one. Hendrick flatly refused the services of an attorney and indicated he had previous experience with arraignments in Washington. The criminal information was given and read to Hendrick. The court again questioned Hendrick about his decision to waive counsel:

> [THE COURT:] ... You have a copy of the Information and you have followed along as the Information was read, you know what the charge is, when it occurred, and where it occurred, and should be fully informed as to that, but knowing that do you still waive the right to be represented by an attorney? Think this over very carefully. You know you are being charged with a felony and a felony may be, upon conviction, punishable by a sentence in the State Penitentiary at Bismarck, so you should give this good consideration. [HENDRICK]: I have given it considerable consideration ever since I was apprehended by the police and I again waive this right.

The sentencing court expressed its belief that Hendrick understood what he was doing, and proceeded to inform him of his "right to a speedy, fair, and public trial by a fair an[d] impartial jury." The court explained at length Hendrick's rights to face the witnesses against him and to have at State expense "any witnesses ... brought in simply by your indicating who it is you want to be brought in and testify in your behalf."

The court told Hendrick he could not be compelled to be a witness against himself. The court explained the various pleas he could enter, and then questioned Hendrick:

[THE COURT:] ... Is there anything here that we have tried to explain to you which you do not understand?

[HENDRICK]: No, sir, I understand it.

THE COURT: You may have a reasonable time to make your plea to the charge, you are not required to do so at this time, and if you will ask for further time this will be given to you.

[HENDRICK]: This too I have given it considerable consideration and I wish to plead guilty.

THE COURT: You upset my time table by doing that because I am not quite ready to ask you what your plea is. You say you understand the charge against you and you are fully advised.

[HENDRICK]: Yes.

THE COURT: Now comes the question, which is superfluous, but are you guilty or not guilty?

[HENDRICK]: I plead guilty as charged.

The prosecutor then filed a confession of guilt signed by Hendrick, and the court adjourned the hearing for a presentence investigation.

At the sentencing a week later, the court was informed that Hendrick had gone through the eighth grade and "completed high school in the Army through the G.E.D. test." After the court advised Hendrick that it would follow the prosecutor's recommendation and sentence him to imprisonment for a term not less than five years and no more than fifteen years, Hendrick replied, "I am grateful I was stopped and given a chance to clear my name."

Hendrick asserts a manifest injustice occurred because the sentencing court did not assure that Hendrick was competent to waive counsel and enter a plea. According to Hendrick, having attempted suicide and been recently returned from the State Hospital, he was incompetent, and his waiver of counsel and guilty plea were therefore involuntary. The record supports the trial court's finding that Hendrick's waiver of counsel and guilty plea were voluntary.

Neither the hospital records nor the testimony of the clinical psychologist, who reviewed those records for these postconviction proceedings, support Hendrick's argument. The hospital records show the doctors at the time described Hendrick's agitated behavior and suicidal gesture as a manipulative act designed to get him out of jail and not a true attempt at suicide. The doctor who recommended Hendrick's discharge to the court wrote: "He understands the nature of his wrongs, knows right from wrong and can assist in his own defense." Dr. Robert Gulkin, who reviewed those records, generally agreed:

The information that was in the records provided to me ... reflected a great deal of impulsivity, very poor judgment on this person's part. This was right up to the time that he was hospitalized when he had engaged in a suicidal gesture, which was a gesture rather than a real suicide attempt as he simply wanted to get out of jail, showing his impulsivity and poor judgment once again.

Gulkin agreed that Hendrick entered into the plea voluntarily, but expressed concern over Hendrick's poor judgment:

THE COURT: Is there anything in the evaluation from the North Dakota State Hospital that would have alerted Judge Fredericks, if he would have—and I don't know from the record whether or not he had access to those records or not—if he would have had access to these records from the State Hospital that would have allerted [sic] him to the possibility of what you have described here?

[DR. GULKIN]: I like to believe so. I think that if someone had read those and thought about the implication of this individual they would have questioned whether or not he should simply be allowed to waive, I think the record is full of information that speaks to poor judgment, impulsivity and basically what he did looks like, and I can't affirm as a fact, but looks to me like it's quick and easy, you know, they caught me, I might as well just get it done without really considering the implications

and without taking the time to review it with an attorney who would be in a much better position to look at the intricacies and discuss with him all the possibilities of what might happen.

THE COURT: Based upon the transcript of the hearing where he entered his plea Judge Fredericks advised him of his right to have an attorney and he advised him that he did not have to enter a plea. Based on the defendant's responses at that time, isn't it reasonable for the judge to assume that he wants to proceed and get this over with?

[DR. GULKIN]: It's reasonable from the perspective of somebody assuming that what someone says is an accurate reflection of what's really happening. If I stand before you and say I know and understand all the issues and I'm a reasonable person and you say, well, you know, he looks and sounds reasonable therefore I'll take him at his word, that does not make it so. And in fact we can draw that conclusion but it remains that there's information that suggests he was, anyway, a highly impulsive individual, and from a clinical standpoint, the law may decide otherwise, but from a clinical standpoint I would question whether or not that decision—those decisions were made knowledgeably and effectively.

The trial court declined, and so do we, to equate "impulsivity" and "poor judgment" with incompetence.

 Hendrick does not claim he was forced to plead guilty or waive counsel by coercion, intimidation, promises, or threats. *See, e.g., State v. Whiteman,* 67 N.W.2d 599 (N.D.1954); *State v. Malnourie,* 67 N.W.2d 330 (N.D.1954). The age, education, and mental capacity of the defendant, his background and experience, and his conduct at the time of the alleged waiver are probative factors bearing on whether an accused has validly waived counsel and pled guilty. *See Application of Stone,* 171 N.W.2d 119, 124 (N.D.1969), *cert. denied,* 397 U.S. 912, 90 S.Ct. 912, 25 L.Ed.2d 93 (1970); *State v. O'Neill,* 117 N.W.2d 857, 862 (N.D.1962), *cert. denied,* 373 U.S. 939, 83 S.Ct. 1544, 10 L.Ed.2d 694 (1963). But here, Hendrick had prior criminal courtroom experience and ap-

pears to have presented himself as a savvy young man. The transcript of the guilty plea proceedings shows Hendrick answered intelligently and unequivocally to all questions put to him. *See State v. Hobus,* 535 N.W.2d 728, 729 (N.D.1995). The trial court's finding that Hendrick was competent and that the waiver of counsel and guilty plea were voluntary is supported by the evidence.

Hendrick also argues the sentencing court's failure to make sure a factual basis existed for the plea and failure to inform him of the possible consequences of his plea made that plea involuntary and unknowing. The trial court found the plea was not knowingly made simply because Hendrick was not informed of the maximum penalty for the crime before the plea. We believe the trial court misapprehended the applicable law in making this finding.

 Under current law, a trial court may not accept a guilty plea without first addressing the defendant personally in open court and informing the defendant of the "mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered." NDRCrimP 11(b)(2). When a trial court does not advise the defendant in accordance with Rule 11(b)(2), "the interests of justice require that the defendant be allowed to withdraw his plea of guilty." *State v. Schumacher,* 452 N.W.2d 345, 348 (N.D.1990). While the plea would have been invalid if Rule 11 were applicable, *Vogel,* 325 N.W.2d at 186, makes clear that rule does not govern this case.

The procedure outlined in Rule 11(b) is designed to ensure that the defendant is fully aware of the consequences of a guilty plea before it is entered. *Schumacher,* 452 N.W.2d at 346. But under the pre-*Boykin* standard for the constitutionality of a guilty plea, the court must consider the totality of the circumstances. *Vogel.* As *Winford v. Swenson,* 517 F.2d 1114, 1117 (8th Cir.), *cert. denied,* 423 U.S. 1023, 96 S.Ct. 464, 46 L.Ed.2d 396 (1975), explained, the standard does not require a record showing that the judge gave the defendant specific procedural warnings before accepting the plea, but only that the record contain facts demonstrating

the voluntary and intelligent nature of the plea.

■ While trial judges in 1966 were certainly encouraged to explain to defendants the possible range of penalties they were submitting themselves to by pleading guilty, *see von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *State v. Magrum*, 76 N.D. 527, 38 N.W.2d 358 (1949), a trial judge's failure to advise the defendant, whether represented by counsel or not, of the range of possible penalties did not necessarily result in invalidation of a guilty plea as being involuntarily and unknowingly made. *See Aiken v. United States*, 296 F.2d 604 (4th Cir.1961); *Verdon v. United States*, 296 F.2d 549 (8th Cir.1961), *cert. denied*, 370 U.S. 945, 82 S.Ct. 1590, 8 L.Ed.2d 811 (1962); *United States v. Kniess*, 264 F.2d 353 (7th Cir.1959); *Hinton v. United States*, 232 F.2d 485 (5th Cir.1956); *Friedman v. United States*, 200 F.2d 690 (8th Cir.1952), *cert. denied*, 345 U.S. 926, 73 S.Ct. 784, 97 L.Ed. 1357 (1953); *Michener v. United States*, 181 F.2d 911 (8th Cir.1950); *Cobas v. Clapp*, 79 Idaho 419, 319 P.2d 475 (1957), *cert. denied*, 356 U.S. 941, 78 S.Ct. 785, 2 L.Ed.2d 816 (1958); *Crowe v. State*, 86 S.D. 264, 194 N.W.2d 234 (1972); Annot., *Court's duty to advise or admonish accused as to consequences of plea of guilty, or to determine that he is advised thereof,* 97 A.L.R.2d 549 (1964); Note, *Withdrawal of Guilty Pleas in the Federal Courts,* 55 Colum.L.Rev. 366, 375–76 (1955). After discussing the case law on the subject, then-Judge Blackmun explained in *Verdon*, 296 F.2d at 553:

> [A]wareness of the possible range of sentence, when mentioned, is named as only one of several factors involved. It is not a factor which, alone and bare, demands in its absence a vacation of a sentence. The circumstances of each case are important. Although Verdon claims to possess only a sixth grade education, the records here definitely reveal an awareness on his part of his status and predicament, a positive conviction as to what he wanted to do, a resentment at what he recognized and regarded as more lenient penalties imposed upon other Dyer Act violators, and an admission of his having walked away from

work detail. While a specific explanatory statement by the court, before accepting the plea, that the penalty under this particular charge was a fine of not more than $5,000 or imprisonment for not more than 5 years, or both, would have eliminated the presence of this point on this appeal, we are convinced that neither the prescription of Rule 11 nor Verdon's constitutional or other rights have been violated.

■ The trial court's exclusive reliance on the sentencing court's failure to specifically inform Hendrick of the range of penalties before accepting the guilty plea, without mentioning the totality of the circumstances and after having found the plea and waiver of counsel to have been voluntary, indicates that the trial court misapplied the applicable law in finding the plea was not knowingly made. Many of the same circumstances that supported the finding on voluntariness also support a finding that the plea was a knowing one. Hendrick had signed a confession to the crime charged. There is no claim the confession was coerced. Hendrick was aware of the seriousness of the offense. The sentencing court had informed Hendrick, who, although young, was no stranger to a criminal courtroom, that prison was a possibility. Moreover, Hendrick expressed no surprise when he was given the five to fifteen year sentence, thus indicating he was aware of the severity of the possible penalty. Under the totality of the circumstances, Hendrick's plea was knowingly made.

We are also uneasy about the trial court's apparent exclusive reliance on the untimeliness of the request to withdraw the guilty plea as justification for denial of the motion. NDRCrimP 32(d) directs:

> (1) The court shall allow the defendant to withdraw a plea of guilty whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice.
>
> (2) A motion for withdrawal is timely if made with due diligence, considering the nature of the allegations therein, and is not necessarily barred because made subsequent to judgment or sentence.
>
> (3) In the absence of a showing that withdrawal is necessary to correct a manifest

injustice, a defendant may not withdraw a plea of guilty as a matter of right once the plea has been accepted by the court. Before sentence, the court in its discretion may allow the defendant to withdraw a plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.

This rule was adapted from the American Bar Association Standards Relating to Pleas of Guilty §§ 2.1(a), 2.1(a)(i) and 2.1(b) [A.B.A. Standards], *see* Explanatory Note to NDRCrimP 32, that were patterned after FRCrimP 32(d). The Commentary to the A.B.A. Standards explains:

> The standard expresses the position, consistent with that found in the federal system but contrary to that taken in most states, that sentence or judgment should not necessarily cut off the opportunity for plea withdrawal. It does not follow, however, that the time of the defendant's motion is totally irrelevant. The fact that it comes after sentence and judgment or a considerable time thereafter may have a bearing upon whether the motion is timely, considering the nature of the allegations in the motion. For example, if the allegation is that the prosecuting attorney did not seek the sentence concessions promised in a plea agreement following discussions with defendant's attorney, it is reasonable to expect the motion to be made promptly upon learning of the prosecutor's inaction in this regard.

A.B.A. Standards, at p. 55 (Approved Draft, 1968). Thus, timeliness of a motion to withdraw a plea of guilty depends on the reason for the claim of manifest injustice.

■ As the A.B.A. Commentary suggests, if a trial court determines that a manifest injustice would occur if a guilty plea were not withdrawn, the untimeliness of the motion would not alone bar withdrawal of the plea. *See* Cases collected in Annot., *Availability, Under 28 USCS § 1651, of Writ of Error Coram Nobis to Vacate Federal Conviction Where Sentence has been Served,* 38 A.L.R. Fed. 617, at §§ 5 and 9 (1978); Annot., *Withdrawal of Plea of Guilty or Nolo Contendere, After Sentence, Under Rule 32(d) of Federal Rules of Criminal Procedure,* 9 A.L.R. Fed. 309, at § 6[c] (1971); Annot., *Delay as affecting right to coram nobis attacking criminal conviction,* 62 A.L.R.2d 432, at §§ 8, 9, and 10 (1958). Rather, the untimeliness of the motion, if unexplained, should be viewed as only one factor in the manifest injustice determination that is probative on the credibility of the defendant's allegations. *See* Annot., 9 A.L.R. Fed. at § 6[c]; Note, 55 Colum.L.Rev. at pp. 379–80; *see also Oksanen v. United States,* 362 F.2d 74, 79 (8th Cir.1966); *Doughman v. State,* 351 N.W.2d 671, 675 (Minn.Ct.App. 1984). The untimeliness of Hendrick's motion was only one factor for the trial court to consider in this case.

At the very latest, Hendrick should have been aware of the unexpected collateral consequences of the 1966 plea-based North Dakota conviction in December 1976 when the Michigan Supreme Court upheld his life sentence as an habitual offender. *See Hendrick,* 247 N.W.2d 840. These post-conviction proceedings were not begun until December 1994, 18 years after Hendrick's life sentence was upheld and almost 28 years after his North Dakota conviction. Hendrick has not offered a reasonable explanation for the delay. These circumstances adversely affect the credibility of Hendrick's claim that his 1966 guilty plea was not voluntarily and knowingly made.

Although the trial court's analysis in this case was imperfect, the trial court denied Hendrick's motions, thus determining that withdrawal of the guilty plea was not necessary to correct a manifest injustice. We conclude that the trial court did not abuse its discretion in denying Hendrick's motions.

The order is affirmed.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.